**CIRCLE CENTRE DEVELOPMENT COMPANY, Appellant,**

v.

**Y/G INDIANA, L.P. d/b/a Ybor's/Gibson's American Grill, Mark I. Gibson, and J. Guy Revelle, III, Appellees.**

No. 49A05–0107–CV–308.

Court of Appeals of Indiana.

Jan. 31, 2002.

Donald D. Levenhagen, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, IN, Attorney for Appellant.

Robert C. Rothkopf, Thomas L. Landwerlen, Landwerlen & Rothkopf, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Circle Centre Development Company ("Circle Centre") brings this interlocutory appeal from the trial court's denial of its motion to dismiss the defendants' Y/G Indiana, L.P., Mark I. Gibson, and J. Guy Revelle, III (collectively "Y/G") counterclaim for fraud. The sole issue for our review is whether the trial court erred as a matter of law when it denied Circle Centre's motion to dismiss Y/G's counterclaim.

We reverse.

## FACTS AND PROCEDURAL HISTORY

In October 1996, Circle Centre entered into a commercial lease with Y/G in which it agreed to lease Y/G retail space located at Circle Centre Mall in Indianapolis. As part of the lease agreement, the parties incorporated the following provision:

There are no representations, covenants, warranties, promises, agreements, conditions or undertakings, oral or written, between Landlord and Tenant other than herein set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless in writing and signed by them. *Tenant acknowledges that it has independently investigated the potential for the success of its operations in the Center and has not relied upon any inducements or representations on the part of Landlord or Landlord's representatives other than those contained in the Lease.*

Appellant's App. at 64 (emphasis added).

In January 2000, Circle Center filed suit against Y/G to recover over $300,000 in unpaid rent. Y/G responded by filing a counterclaim in which it alleged that Circle Centre had induced Y/G to sign the lease using fraudulent representations. In particular, Y/G asserted that during negotiations, Circle Centre had verbally misrepresented the dollar amount of retail sales generated by other stores in the mall. In response to Y/G's counterclaim, Circle Centre filed a motion for judgment on the pleadings.[1] In June 2001, following a hearing, the trial court denied Circle Centre's motion and later certified its order for interlocutory appeal to this court. We granted Circle Centre's motion and accepted jurisdiction under Appellate Rule 14(B). This appeal followed.

## DISCUSSION AND DECISION

Like a motion to dismiss for failure to state a claim pursuant to Trial Rule 12(B)6, a motion for judgment on the pleadings under Trial Rule 12(C) tests the sufficiency of the complaint to state a redressable claim, not the facts to support it. *Book v. Hester,* 695 N.E.2d 597, 599 (Ind. Ct.App.1998); *National R.R. Passenger Corp. v. Everton by Everton,* 655 N.E.2d 360, 363 (Ind.Ct.App.1995). A judgment on the pleadings is proper only when there are no genuine issues of material fact and when the facts shown by the pleadings clearly entitle the moving party to judgment. *Bledsoe v. Fleming,* 712 N.E.2d 1067, 1069 (Ind.Ct.App.1999). A trial court should grant such a motion only when it is clear from the pleadings that the non-moving party cannot in any way succeed under the facts and allegations therein. *Id.* at 1069–70. In reviewing a trial court's decision on a motion for judgment on the pleadings this court conducts a de novo review. *Eskew v. Cornett,* 744 N.E.2d 954, 956 (Ind.Ct.App.2001), *trans. denied.* We look only to the pleadings in making this assessment. *Id.* We will accept as true the well-pleaded material facts alleged. *Id.* The moving party is deemed to have admitted well-pleaded facts in favor of the nonmovant, and this court will draw all reasonable inferences in favor of the non-movant. *Id.*

Circle Centre contends that the trial court erred when it denied its motion for judgment on the pleadings as to Y/G's fraud counterclaim. Specifically, Circle Centre maintains that, as a matter of law, any oral representations made to Y/G during negotiations cannot be fraud in the inducement because the lease provision

---

1. *See* Ind. Rules of Trial Procedure, Rule 12(C).

disclaiming ·reliance on such representations supersedes any prior oral representations. We agree.

 To establish fraud, Y/G would have to prove that Circle Centre made (1) a material representation of past or existing fact (2) that was untrue and known to be untrue, or else recklessly made, and (3) Y/G did in fact rely on the representation, (4) which proximately caused it to suffer injury. *See Prall v. Indiana Nat'l Bank,* 627 N.E.2d 1374, 1378 (Ind.Ct.App.1994). But the parol evidence rule bars the admission of any evidence of oral representations that contradicts a written contract. *See Ruff v. Charter Behavioral Health Sys. Of Northwest Indiana,* 699 N.E.2d 1171, 1174 (Ind.Ct.App.1998), *trans. denied.* An exception to the parol evidence rule applies, however, in the case of fraud in the inducement, where a party was "induced" through fraudulent representations to enter a contract. *Id.* Here, because Y/G alleged fraud in the inducement, the parol evidence rule will not bar the admission of extrinsic evidence concerning the circumstances surrounding the execution of the lease. *Id.; see Paulson v. Centier Bank,* 704 N.E.2d 482, 492 n. 9 (Ind.Ct.App.1998); *see also* Corbin On Contracts § 580, p. 431 (1960).

 That exception notwithstanding, Circle Centre maintains that Y/G cannot allege fraud where, as here, the alleged reliance on oral representations runs counter to an express "integration" clause in the lease. Our courts have addressed this issue sparingly and with varying results. In *Jenkins v. Nebo Properties, Inc.,* 439 N.E.2d 686, 694 (Ind.Ct.App.1982), we held that despite the presence of a contract clause disclaiming reliance on any oral representations, when the issue is one of fraud, such language does not bind the alleged victim. Further support for this

position is derived from general parole evidence rule principles, which state:

> [F]raud in the inducement of assent ... may make the contract voidable without preventing its existence, and without showing that the writing was not agreed on as a complete integration of its terms. In such case the offered testimony may not vary or contradict the terms of the writing, *although it would be admissible even if it did so; it merely proves the existence of collateral factors that have a legal operation of their own, one that prevents the written contract from having the full legal operation that it would otherwise have had. This is not varying or contradicting the written terms of agreement, although it does vary or nullify in part their legal effect.*

Corbin On Contracts, § 580, p. 438 (1960) (emphasis added).

On the other hand, in *Prall* we found that a mutual release, which stated that Prall had not relied on any representations by INB, prevented him from later claiming fraud based on such representations because he could not, as a matter of law, establish reliance on those representations. *See Prall,* 627 N.E.2d at 1378–79; *see also Urschel Farms, Inc. v. Dekalb Swine Breeders, Inc.,* 858 F.Supp. 831, 840–41 (N.D.Ind.1994). Y/G attempts to distinguish *Prall* because, in that case, the releasing party had full access to the information when he signed the release. But Prall, like Y/G, also stated that he was not relying upon the representations of the other party. *Prall,* 627 N.E.2d at 1378. And just as Prall represented, in effect, that he had investigated the information, Y/G expressly stated that it had performed its own independent investigation. It is too late for Y/G to renounce its unambiguous disclaimer and contend, as it now does, that it had a right to rely on Circle Centre's representations because it did not

have other means of access to the information.

Quoting, in part, from an opinion written by then Judge Ruth Bader Ginsburg, the court in *Urschel Farms* explained its decision as follows:

Plaintiffs cannot overcome the written instrument here, and, particularly, the integration clause, by invoking the fraud-in-the-inducement exception to the parol evidence rule. The exception for a party who "has been induced by a fraudulent misrepresentation to enter the contract," must not be stretched or inflated in a way that "would severely undermine the policy of the parol evidence rule, which is grounded in the inherent reliability of a writing as opposed to the memories of contracting parties." We need not belabor the point. We have here the case of "a party with the capacity and opportunity to read a written contract, who ha[s] execute[d] it, not under any emergency, and whose signature was not obtained by trick or artifice;" such a party, if the parol evidence rule is to retain vitality, "cannot later claim fraud in the inducement."

*Urschel Farms*, 858 F.Supp. at 840 (citations omitted).

In its brief, Circle Centre points to the following rationale from other jurisdictions, which we find persuasive:

[A] party seeking to avoid a written disclaimer of reliance, like the tenant in the present case, is itself guilty of fraudulently representing its intentions. "The plaintiff made a representation in the contract that it was not relying on specific representations not embodied in the contract, while, it now asserts, it was in fact relying on such oral representations. Plaintiff admits then that it is guilty of deliberately misrepresenting to sellers its true intention. To condone this fraud would place the purchaser in a favored position. [This is particularly so, where, as here, the (tenant) confirms the contract, but seeks damages. If the plaintiff has made a bad bargain he cannot avoid it in this manner]." *Danann Realty Corp. v. Harris*, [5 N.Y.2d 317, 184 N.Y.S.2d 599] 157 N.E.2d 597, 59 [600] (N.Y.1959) (citation omitted).

\* \* \*

"Were we to permit plaintiffs' use of the defendants' prior representations . . . to defeat the clear words and purpose of the [f]inal [a]greement's integration clause, contracts would not be worth the paper on which they are written." *One–O–One Enterprises, Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C.Cir.1988).

Nevertheless, in *Prall*, we did not foreclose the possibility that such a plaintiff could maintain a fraud claim. In order to overcome the lease provision here, Y/G would have to show both that it had a right to rely on Circle Centre's alleged misrepresentations and that it did in fact rely on them in executing that portion of the lease which disclaims such reliance. *See Prall*, 627 N.E.2d at 1379. In other words, the fraud must have induced or produced the execution of the lease disclaimer or contributed to it as a cause. *Id.* Additionally, it must appear the misrepresentation was made with the intent that it should be acted on by the releasor in the execution of the disclaimer. *Id.* Y/G does not, however, allege that Circle Centre fraudulently induced it to execute the disclaimer in the lease but only that Circle Centre induced it to sign the lease generally.

Consistent with the decisions in *Prall* and *Urschel Farms*, we hold that Y/G cannot, as a matter of law, claim fraud in the inducement after having expressly disclaimed in the lease itself any reliance on Circle Centre's oral representations. Y/G

cannot have it both ways. It cannot affirmatively state in writing that it has "independently investigated" the matters at issue and that it "has not relied upon any inducements or representations" by Circle Centre or its agents and then, after the fact, repudiate those provisions. Given the disclaimer, and without any allegation that the disclaimer itself was procured by fraud, Y/G has failed to demonstrate on the face of the pleadings that it had a *right* to rely on Circle Centre's alleged misrepresentations. The trial court, therefore, erred when it found that Y/G had stated a redressable claim for fraud and denied Circle Centre's motion for judgment on the pleadings. The judgment of the trial court is reversed.

Reversed.

BAKER, J., and MATTINGLY MAY, J., concur.